LYON *v.* AETNA LIFE INSURANCE COMPANY.

[No. 16,842. Filed October 20, 1942. Rehearing Denied December 2, 1942. Transfer Denied January 11, 1943.]

574

576

 

*Parr, Parr & Parr, Daily, Daily & Daily, O. B. Hanger,* and *Connor D. Ross,* all of Indianapolis, for appellant.

*Earl B. Barnes, Hubert Hickam, Kurt F. Pantzer, Alan W. Boyd,* and *Frederic D. Anderson,* all of Indianapolis (*Adney & Adney,* of Lebanon, of counsel), for appellee.

BEDWELL, J.—By this action, the appellant, as trustee for beneficiaries under a life insurance policy, sought to recover the insurance provided for therein. The record shows the following: On December 12, 1930, Frank McKinney Hubbard made an application through Paul W. Simpson, a general agent of the appellee, Aetna Life Insurance Company, for a $20,000 ordinary life insurance policy upon the applicant's life. In the application there appeared, among others, the following questions and answers:

"7. Has any payment of premium been made and binding receipt given on form 257D detached herefrom? No. What settlement has been made? None. If given, the terms of the binding receipt are hereby agreed to. If not given, it is agreed that no insurance hereon shall be effective until a policy is issued and the entire first premium has been paid during the good health of the applicant and within sixty days from the date of medical examination."

On the same day, Hubbard, at the request of Simpson, submitted to a medical examination by a medical examiner of appellee. Thereafter, the appellee issued its policy of life insurance upon the life of Hubbard in the

amount of $20,000 and bearing the date of December 20, 1930. Such policy provided for an initial and annual premium of $1,350 and contained the following provisions:

> "This policy shall not become effective until the first premium upon it is paid during the good health of the insured."

> "All agreements made by the company are signed by its president, vice-president, secretary, assistant secretary, treasurer, or assistant treasurer. No other person can alter or waive any of the conditions of this policy, extend the time for paying a premium or make any agreement which shall be binding on the company."

After its issuance, the appellee mailed the policy to the agent, Simpson, and directed him to have another medical examination made of Hubbard and particularly with reference to his heart and to deliver the policy, if and when, Simpson was completely satisfied as to the risk. After the receipt of the policy, Simpson caused Hubbard to be reexamined on December 22, 1930, by a medical examiner of appellee, who reported that he had reexamined the heart of Hubbard and had found nothing pathological.

On December 23, 1930, Simpson took the policy and a receipt for the initial premium and went to the office of Hubbard. The testimony of Simpson concerning what was said and what occurred during such visit was in substance as follows: Simpson told Hubbard that he had his policy but that he didn't know whether he should deliver it, because there was some question concerning Hubbard's health. Hubbard replied that there was nothing the matter with him and Simpson stated that he didn't think so either. Simpson then laid the jacket containing the policy on Hubbard's desk and Hubbard said, "I will check up my finances, look

it over and give you a check for it after the first of the year." He took the policy and put it in the left hand top drawer of his desk. He said, "Is this in force?" Simpson replied, "It isn't, if anything should happen to you it wouldn't be worth fifteen cents." Hubbard replied, "I am not going to die anyway." That was all that was said. Hubbard had some Christmas tree decorations with which he intended to decorate a tree. He left his office and went to the Columbia Club in Indianapolis and Simpson returned to his office and gave the receipt for the initial premium to his cashier. There was no further business contact between Simpson and Hubbard. Hubbard died of a heart attack on December 26, 1930, with the policy in his possession, but without having paid the initial premium. The complaint of appellant proceeds upon the theory that appellee waived the provisions of the policy heretofore quoted, which provided that the policy shall not become effective until the first premium is paid during the good health of the insured.

There was a trial by the court, which after proper request, made a special finding of the facts and stated its conclusions of law thereon. Appellant relies for reversal upon the overruling of his motion to strike out the second and fifth paragraphs of appellee's answer, upon the overruling of his motion for a new trial, and upon claimed error in each of the conclusions of law.

So well is it established that error requiring reversal on appeal cannot be predicated upon the action of the trial court in refusing to strike out a part or all of a pleading, that it is not necessary for us to give further consideration to appellant's motion to strike out these particular paragraphs of answer. *Guenther* v. *Jackson* (1920), 73 Ind. App. 162, 126 N. E. 873; *London & Lancashire Indemnity Co.* v.

*Community Savings & Loan Assn.* (1936), 102 Ind. App. 665, 670, 4 N. E. (2d) 688; *Lindley* v. *Sink* (1940), 218 Ind. 1, 6, 30 N. E. (2d) 456.

Appellant's motion for a new trial contains sixty-seven separate specifications, but sixty-four thereof allege error in the admission or exclusion of evidence. The first specification in such motion is as follows: "(1) The decision of the court is contrary to law." Thereunder, by numerous points, appellant seeks to question the correctness of the conclusions of law.

The error, if any, in the conclusions of law on the facts specially found, can be presented on appeal only under exceptions to the conclusions of law and not under one of the statutory grounds of a motion for a new trial. *Bundy* v. *McClarnon* (1889), 118 Ind. 165, 20 N. E. 718; *Rooker* v. *Fidelity Trust Co.* (1921), 191 Ind. 141, 131 N. E. 769; *Boos* v. *Siegmund* (1910), 45 Ind. App. 284, 90 N. E. 781; *Mertz, Admr.,* v. *Wallace* (1931), 93 Ind. App. 289, 169 N. E. 333; *Morsches-Nowels Lumber Co.* v. *Pence* (1939), 106 Ind. App. 219, 18 N. E. (2d) 958; *Minter* v. *Bittler, Receiver* (1941), 108 Ind. App. 522, 29 N. E. (2d) 799.

By the second specification in his motion for a new trial, appellant presents the question of the sufficiency of the evidence to sustain the special finding of the trial court. Two paragraphs of such special finding are attacked. They are as follows:

> "22. Neither defendant nor any of its officers or agents waived or purported to waive or intended to waive the conditions precedent in the policy and application that the first premium be paid before the insurance became effective."

> "23. Neither defendant nor any of its officers or agents waived or intended to waive the condition precedent in the policy and application that Hub-

bard be in good health at the time the insurance became effective."

We will first consider the sufficiency of the evidence to sustain paragraph twenty-two of the trial court's finding. Waiver is the voluntary and intentional relinquishment of some known right. *Rushville Natl. Bank, Tr.* v. *State Life Ins. Co.* (1936), 210 Ind. 492, 500, 502, 1 N. E. (2d) 445; *Farmers' Ins. Assn.* v. *Males* (1924), 82 Ind. App. 172, 145 N. E. 446; *Commercial Union, etc., Co.* v. *Schumacher* (1919), 71 Ind. App. 526, 544, 119 N. E. 532.

In *Commercial Union, etc., Co.* v. *Schumacher, supra,* this court defines "waiver" as follows:

"A waiver is defined as an intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right; an election by one to forego some advantage he might have taken or insisted upon."

A stipulation in an insurance policy to the effect that the policy shall not become effective until the first premium is paid, may be and ordinarily is waived by the insurer by an unconditional delivery of the policy under an express or implied agreement for credit. That such credit is given is usually implied from such a delivery of the policy without requiring payment. This doctrine rests upon the presumption that in such case, a credit for the premium must have been intended by the parties upon the delivery, since it is not reasonable that they would enter into a contract which was void by its own terms. But this presumption can't be applied where the evidence discloses that it was the intention of the parties to deliver the policy conditionally for inspection or examination, or where it was their intention that the delivery should not make the policy effective and that it was not to be in force

until the initial premium was paid or some other condition precedent was complied with. *Kentucky Cent. L. & A. Ins. Co.* v. *White* (1939), 106 Ind. App. 530, 19 N. E. (2d) 872; *Penn Mut. Life Ins. Co.* v. *Norcross* (1904), 163 Ind. 379, 72 N. E. 132; *Miller* v. *Life Ins. Co.* (1870), 12 Wall. 285, 20 L. Ed. 398; *Massachusetts Mut. Life Ins. Co.* v. *National Bank of C.* (1938), 95 F. (2d) 797, 800, 118 A. L. R. 1065; *Farmers, etc., Ins. Co.* v. *Hale* (1919), 69 Ind. App. 413, 122 N. E. 19; *Russell* v. *Prudential Ins. Co.* (1903), 176 N. Y. 178, 68 N. E. 252, 98 Am. St. Rep. 656; *Christophersen* v. *Metropolitan Life Ins. Co.* (1917), 199 Mich. 634, 165 N. W. 793; *McDonald* v. *Provident Savings Life Assurance Society* (1900), 108 Wis. 213, 84 N. W. 154, 81 Am. St. Rep. 885.

In the case of *Massachusetts Mut. Life Ins. Co.* v. *National Bank of C., supra,* the court says:

> "The doctrine that, nothing else appearing, delivery of the policy waives a condition requiring prepayment of premium rests upon the presumption that, in such case, a credit for the premium must have been intended by the parties upon the delivery, as it is not reasonable that they would enter into a contract void by its own terms. There is no room for the application of the doctrine, however, where the surrounding circumstances show, as they do here, that no credit was intended."

We think the evidence heretofore recited in this cause was sufficient to permit the determination by the trial court that appellee did not intend to extend credit for the initial premium. The statement of Simpson that the policy was not in force and that "if anything should happen to you, it wouldn't be worth fifteen cents," coupled with the evidence that Simpson retained possession of the official receipt for the initial premium, are items indicating the fact that

appellee did not intend to put the policy in force and to extend credit for the premium. It is so well established that it is almost axiomatic that this court will not weigh evidence or determine the credibility of witnesses.

We hold that there was sufficient evidence to sustain paragraph twenty-two of the special finding. This eliminates the necessity of considering the sufficiency of the evidence to sustain paragraph twenty-three of the special finding, and also the necessity of considering claimed error in the admission or exclusion of evidence which bore upon the health of Hubbard or waiver of the health provisions of the policy. Error therein would be no ground for reversal. When it appears that a judgment is based upon two findings or grounds, either of which independent of the other is sufficient to support the judgment, it will not be reversed because of error relative to one of such findings or grounds. *Union Traction Co.* v. *Barnett* (1921), 75 Ind. App. 19, 127 N. E. 287; *Putt* v. *Putt* (1897), 149 Ind. 30, 48 N. E. 356, 51 N. E. 337; *Southern R. Co.* v. *Ellis* (1913), 53 Ind. App. 34, 101 N. E. 105; *Terry* v. *Davenport* (1908), 170 Ind. 74, 81, 83 N. E. 636.

We will consider claimed error in the admission or exclusion of evidence that may have influenced the making of paragraph twenty-two of the special finding.

At a previous trial of this cause Simpson had testified as a witness. At the trial here involved the appellant, without showing the unavailability of Simpson as a witness, and not for the purpose of impeachment, but as primary evidence to sustain his complaint, placed one of his attorneys on the witness stand and, over objection of appellee, such witness was permitted to narrate a portion of the testimony of Simp-

son given at the prior trial. This was admitted, we presume, upon the theory that thereby an admission of appellee was established. We think the testimony was improperly admitted. Simpson, when he testified as a witness at the previous trial, was not acting within the course and scope of his employment by appellee, and the statements of an agent are binding upon his principal only when made during the course of his duties and within the scope of his authority relative to business contemplated by the agency in which he is then engaged. 20 Am. Jur., Evidence, § 596, p. 505, and cases in various States under Note .11; *Indiana Union Traction Co. v. Scribner* (1911), 47 Ind. App. 621, 635, 93 N. E. 1014.

The testimony given by a witness at a former trial of an action, although such witness was an agent of one of the parties at the time he testified, is not admissible as primary evidence to establish an admission of such party. *Denver and Rio Grande Railroad Co. v. Watson* (1895), 6 Colo. App. 429, 40 P. 778; *The Savannah, Florida and Western Railway Co. v. Flannagan* (1889), 82 Ga. 579, 9 S. E. 471; *Columbia Nat. Bank v. Rice* (1896), 48 Neb. 428, 67 N. W. 165; *Salley v. Manchester and Augusta R. R. Co.* (1901), 62 S. C. 127, 40 S. E. 111.

But Simpson was available as a witness at the last trial and it is well established that the testimony of one witness cannot be given in evidence by another in a subsequent trial of the same case, until it is made to appear that the original witness is dead, or is insane, or otherwise so physically disabled that by exercise of due diligence his deposition could not have been taken, or that the witness is a nonresident of the State, or that he is absent from his residence, and that his whereabouts cannot, by due

diligence, be ascertained, or that he has absented himself by the procurement of the opposite party. *Wabash R. Co.* v. *Miller* (1902), 158 Ind. 174, 183, 61 N. E. 1005; *New York Central Railroad Co.* v. *Pinnell* (1942), 112 Ind. App., 40 N. E. (2d) 988, 990.

After a portion of such former testimony of Simpson was so improperly admitted, the appellee, over objection of appellant, was permitted to cross-examine the attorney of appellant about other testimony of Simpson given at such prior trial, and appellant now seeks to predicate error upon the trial court's action in permitting the same. An appellant cannot complain of error in the admission of evidence which is explanatory of evidence erroneously introduced by him. 3 Am. Jur., Appeal & Error, § 879, p. 430; 31 C. J. S., Evidence, § 190, p. 913.

Appellant, by several specifications in his motion for a new trial, attempts to predicate error upon the action of the trial court in permitting proof of certain facts that tended to show that Hubbard never had possession of the official receipt issued by appellee to evidence the payment of the initial premium. The evidence was clearly admissible to establish appellee's claim that it did not extend credit for such premium.

Appellant also claims error because the appellee was permitted to introduce into evidence a telegram from Simpson to appellee's vice president. Ordinarily, evidence of a transaction between an agent and one of the officials of his principal, outside the presence of the other party to an action against the principal, is not admissible, but here the appellant himself had introduced into evidence a letter that was sent on the same date by Simpson to the vice president of appellee, and this letter referred to the particular tele-

gram which appellee produced and the letter and the telegram discussed the same subject-matter.

Where a portion of the correspondence on the particular subject is put in by one party, it opens the door for the admission of the remaining correspondence between the same persons about the same subject-matter. *Buedingen Mfg. Co.* v. *Royal Trust Co.* (1904), 85 N. Y. S. 621; Wigmore on Evidence (3 Ed.) § 2120; *Portsmouth Cotton Oil Ref. Corp.* v. *Madrid Cotton Oil Company* (1916), 195 Ala. 256, 71 So. 111; *Michigan Trust Co.* v. *Kraker* (1933), 265 Mich. 518, 251 N. W. 568; 20 Am. Jur., Evidence, § 914, p. 770.

Appellant also seeks to predicate error because the trial court permitted the appellee to introduce into evidence certain exhibits which were copies of the rules promulgated by appellee for the guidance of its agents in writing insurance. The appellee had offered to introduce these rules and the trial court sustained an objection to the introduction thereof. Thereafter, appellant proceeded to cross-examine one of appellee's witnesses concerning such rules and the provisions thereof, and the appellee renewed its offer to introduce the same and they were admitted. Under such circumstances the admission of the evidence was proper. In many situations a party becomes entitled to introduce evidence, otherwise inadmissible, by reason of similar or related evidence which has been tendered by his opponent.

Where a part of the conversation is put in evidence, the adverse party is entitled to prove the remainder of the conversation, particularly to the extent that it modifies or explains the part admitted.

Also, where part of a writing is introduced into evidence, the opponent may introduce the remaining

part of the writing or have the entire letter or document read in evidence, under like limitation. *The Ohio, etc., R. W. Co.* v. *Stein* (1892), 133 Ind. 243, 31 N. E. 180, 32 N. E. 831, 19 L. R. A. 733; 20 Am. Jur., Evidence, §§ 274, 275, p. 262; 31 C. J. S., Evidence, § 190, p. 913.

Numerous other objections are urged by appellant to the admission or exclusion of evidence. We have examined all of them and find no error that would justify the reversal of the cause. The admission or rejection of evidence which is not related to material matters or of a character substantially affecting the rights of the party, is not the basis for the reversal of a judgment. *Swallow Coach Lines, Inc.* v. *Cosgrove* (1938), 214 Ind. 532, 15 N. E. (2d) 92.

The parties discuss extensively the question of whether Simpson had the legal right or authority to waive the payment of the initial premium, but since the trial court has determined that he did not attempt to do so, we know of no good reason why we should discuss the question of his power or authority.

Appellant discusses extensively the special finding of facts and the conclusions of law, but he points to no defect in the special finding that makes it legally insufficient as a basis for the trial court's conclusions. It is wholly immaterial that the special finding contains conclusions of law or conclusions of fact or evidentiary facts, if there exists sufficient ultimate facts to justify the conclusions. *Fraser* v. *Churchman* (1909), 43 Ind. App. 200, 202, 86 N. E. 1029; *Universal Insurance Co.* v. *Glover* (1935), 100 Ind. App. 327, 195 N. E. 583; *City of Evansville* v. *Maddox* (1940), 217 Ind. 39, 49, 25 N. E. (2d) 321, 324.

Where a party in his brief merely points out the existence of conclusions of law or evidentiary facts in

the special finding, he does not show reversible error. Evidentiary facts may take the place of an ultimate fact, if the evidentiary facts are of such a nature that they definitely establish the essential ultimate fact.

The judgment is affirmed.

BLESSING, J., not participating.

NOTE.—Reported in 44 N. E. (2d) 186.