## FAHLER *v.* FREEMAN

[No. 867A48. Filed November 12, 1968. No Petition for Rehearing filed.]

*Cook and Martin,* of Kokomo, for appellant.

*Hunt, Suedhoff & Wilks,* of Fort Wayne, for appellee.

BIERLY, J.—This is an action for damages for personal injuries growing out of a "rear-end" type automobile accident. The appellant alleged in his complaint that he operated a motor vehicle north on Clinton Street in the City of Fort Wayne, Indiana, and that while stopped at the automatic stoplight at the intersection with Main Street, the appellee, Mrs. Freeman drove her automobile into the rear-end of plaintiff's stopped vehicle.

The issues were joined by the plaintiff's complaint and the defendant's answer thereto which denied all material allegations in the complaint. The case was tried to a jury before the Allen Superior Court, No. 3, Allen County, Indiana. The jury found for the defendant, and judgment was so entered with costs to the plaintiff.

There was considerable conflict in the testimony of the parties and witnesses. The record is well punctuated with exchanges by counsel as to the propriety and admissibility

of certain testimony. Assigned as error, specifically, is the overruling of the appellant's objection to questions by the appellee which showed that the appellant received employee's compensation payments for his medical expenses and did not bear these expenses out of pocket. The appellee, on the other hand, states that these questions were not designed to show payment of workmen's compensation benefits as alleged, but to impeach appellant's prior testimony. Since much of the appeal involves this issue, a portion of the testimony in question is set out here:

"Q. Let's just look at your next item. What is this next report that you have here in your file?

"A. This is to determine what to do with the X-ray invoice.

"Q. What did you do with it?

"A. I attached it to this report and sent it to Mr. Maroney.

"Q. Who is Mr. Maroney?

"A. He is claim adjuster for Continental Insurance Company.

"Q. And you sent him the bill?

"A. Yes, sir.

"Q. What for?

"MR. COOK: We are going to object to this information. It is going into a matter which certainly doesn't have any bearing on this law suit. He is responsible for it regardless of who paid the bill and this is going into an area which the defense certainly has no right to go into.

"MR. BORROR: I believe yesterday Mr. Cook in questioning him said, 'How much did *you* pay, Mr. Fahler, on these bills?' I believe this is impeachment because I don't believe he paid them. (Emphasis supplied.)

"THE COURT: Overruled.

\*  \*  \*

"Q. Those are the things you testified here to yesterday that were your expenses?

"A. *I paid for these,* then sent the bill to Continental. (Emphasis supplied.)

"Q. And they took care of it?

"A. Yes, sir.

"Q. But you didn't tell us that yesterday, did you?

"MR. COOK: Any compensation benefits paid here has to be paid back out of any recovery made here and it is our contention, Your Honor, that compensation payments are payments that this man is required to return to the Continental and that they are his obligation and there is no way for this wrongdoing defendant to get out of this obligation of paying these by trying to shift it to some one else.

"MR. BORROR: In response to that, Your Honor, from Mr. Cook, perhaps he has some merit in that position but he tried to have this man testify yesterday he had paid these bills out of his own pocket to give a false impression to the jury and we are trying to clear it up.

"MR. COOK: He was asked if these bills to these doctors were paid in these amounts, and whatever was paid by Continental this man has to pay back out of whatever this jury returns. That is the law.

"THE COURT: Overruled."

In arguing for reversal on the issue of compensation payments, the appellant cites *Brindle v. Harter* (1965), 138 Ind. App. 692, 211 N. E. 2d 513, wherein the court stated in discussing a similar situation:

"In view of the above, therefore, it appears that as a general rule of law in this state evidence erroneously admitted upon cross-examination, to constitute reversible error, must have been of the character which could not have been proven by the examiner in direct examination, it must be of a type which could affect the attitude of the jury or prejudice the complaining party; and there must appear the possibility that in view of all evidence presented the erroneously admitted evidence could have affected the final verdict."

The court went on to say:

". . . . It was held in *J. C. Penney, Inc. v. Kellermeyer* (1939), 107 Ind. App. 253, 265, 19 N.E. 2d 882, 886, 22 N.E. 2d 899: 'Whether or not such insurance was carried by the appellant could not in the slightest manner affect the question of the appellant's negligence charged in the complaint. Persistent efforts in this field of evidence which tend only to confuse and possibly prejudice the jury *are usually regarded as prejudicial requiring a reversal.*' " (Their emphasis).

The appellee in *Brindle, supra,* submitted that, since the jury had found no negligence on the part of the defendant in that case, the admitted testimony, even if erroneous, was not reversible error since it went only to the question of damages. To this assertion the court replied:

". . . We disagree with this proposition and cite as controlling the following language regarding a somewhat similar situation found at 77 A. L. R. 2d 1156:

'Generally, it has been held to constitute error, requiring a reversal or new trial, to bring to the jury's attention the fact that the plaintiff in a personal injury or death action is entitled to workmen's compensation benefits. The courts have reasoned that such information would tend to prejudice the jury and influence their verdict, *either as to liability or damages* . . ..'"
(Their emphasis.)

*Brindle,* however, faced the issue of the propriety of certain questions concerning workmen's compensation which were outside the scope of the direct examination. That case ▮ ▮ is therefore distinguishable from the case at bar. In this cause, the questions were offered for purposes of impeachment of the plaintiff's prior testimony and, on these facts, properly so. The direct questioning of the plaintiff and his careful answers appeared to be clearly designed to leave the jury with a false impression. The direction of the plaintiff's testimony departed from the issue of the *amount* of damages he had allegedly sustained and then focused upon *who* had actually *paid* for them. Plaintiff entered this area at his peril. At that point the defendant was entitled to refute

the inference that plaintiff had paid these bills himself and had exhausted his savings in doing so as he had implied. Where evidence on a certain issue is introduced by one party, and it appears likely that the other party will be prejudiced unless he is permitted to introduce contradictory or explanatory evidence, such evidence should be permitted. *Reserve Life Insurance Co. v. Luedke et al.* (1961), 132 Ind. App. 476, 177 N. E. 2d 482; also see *Lyon v. Aetna Life Insurance Company* (1943), 112 Ind. App. 573, 44 N. E. 2d 186. This is an obvious and logical exception to our rule as stated in *Brindle, supra.*

Having disposed of this issue thusly, we see no need to discuss the question of prejudicial testimony going only to the issue of damages which was argued by the parties as an alternative theory.

Appellee's Motion to dismiss as ordered held in abeyance on April 5, 1968, by this court, is now moot and requires no comment.

We are of the opinion that the appellant here has failed to establish any reversible error and, hence, the judgment of the trial court should be affirmed.

Judgment affirmed.

Pfaff and Smith, JJ., concur.

Cook, P.J., not participating.

NOTE.—Reported in 241 N. E. 2d 394.